1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

11
12
13
14
15
16

| | |
|---|---|
| MARK MAYES,<br><br>                         Plaintiff,<br><br>    v.<br><br>INTERNATIONAL MARKETS LIVE et al,<br><br>                         Defendants. | CASE NO. 2:22-cv-01269-TL<br><br>ORDER ON MOTION TO COMPEL ARBITRATION AND DISMISS, MOTION FOR SUMMARY JUDGMENT, MOTION FOR SANCTIONS, AND MOTION FOR EXTENSION |

17
18
19
20
21
22
23
24

This matter comes before the Court on Defendants' Motion to Compel Arbitration and Dismiss (Dkt. No. 35), Plaintiff's Motion for Summary Judgment (Dkt. No. 58), Plaintiff's Motion for Sanctions (Dkt. No. 61), and Plaintiff's Motion for Extension of Time to Add Exhibits (Dkt. No. 78). Having considered the relevant record and governing law, the Court GRANTS in part and DENIES in part the Motion to Compel Arbitration, DENIES Defendants' motion to dismiss, STRIKES Plaintiff's Motion for Summary Judgment, DENIES both Parties' requests for sanctions, and GRANTS the Motion for Extension.

This action arises out of Plaintiff Mark Mayes' allegations that Defendants International Markets Live, Inc. ("IML") and its CEOs Isis De La Torre and Christopher Terry engaged in a pyramid scheme to provide poor, fraudulent, or deceptive advice and other tools related to forex trading, among other allegations of misconduct. Dkt. No. 12 at 2, 7–12 (amended complaint). Plaintiff seeks monetary damages and injunctive relief. *Id.* at 12. Plaintiff is proceeding *pro se* (without an attorney).

## I.   BACKGROUND

IML provides online educational products regarding markets, include trading foreign currency. Dkt. No. 35 at 1. The Parties dispute exactly when Plaintiff became an IML customer; Plaintiff alleges he joined IML "around 2019" (Dkt. No. 12 at 7), while Defendants claim he joined on July 2, 2020 (Dkt. No. 35 at 1–2; Dkt. No. 73 at 1).

The Court previously struck extraneous filings by Plaintiff (Dkt. Nos. 39, 42, 44, 45, 46, 50, 51) due to violations of the Local Civil Rules. *See* Dkt. No. 52. The Court next struck Plaintiff's improper surreply to the motion to compel arbitration. *See* Dkt. Nos. 55, 56. The Court then entered a stay, instructing that "[a]ny motion, brief, declaration, or other filing that are submitted while the case is stayed may be summarily denied or stricken." Dkt. No. 69 at 2. On October 19, 2023, while the stay was in effect, Plaintiff filed a motion seeking to submit additional exhibits and submitted a flash drive containing videos and photos. Dkt. Nos. 78, 79.

## II.   LEGAL STANDARDS

### A.   Motion to Compel Arbitration

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 2 *et seq.*, governs arbitration agreements in most contracts affecting interstate commerce. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001) (holding that only contracts of employment of transportation workers are exempt). District courts have jurisdiction to determine whether there is an agreement

to arbitrate a particular issue "unless the parties clearly and unmistakably provide otherwise." *In re Van Dusen*, 654 F.3d 838, 843 (9th Cir. 2011). In deciding whether to compel arbitration, a court's inquiry is generally limited to two "gateway" issues: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If both conditions are met, "the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Id*. Arbitration agreements "shall be valid, irrevocable, and enforceable" in the absence of legal or equitable grounds such as fraud, duress, or unconscionability. 9 U.S.C. § 2; *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal citations omitted). Where "[t]he crux of the complaint is that the contract as a whole (including its arbitration provision) is . . . invalid," even the validity of the contract becomes a question for the arbitrator to decide. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444–46 (2006).

A motion to compel arbitration "is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate," so, courts apply the summary judgment standard when evaluating such a motion. *Hansen v. LMB Mortg. Serv., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). Thus, any doubt is resolved in favor of the non-moving party.

**B.     Stay or Dismissal of Actions in Arbitration**

Generally, the FAA requires a stay of trial court proceedings upon request by one of the parties while arbitration is pending. 9 U.S.C. § 3. "[N]otwithstanding the language of § 3, a district court may either stay the action or dismiss it outright when . . . the court determines that all of the claims raised in the action are subject to arbitration." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014) (citing *Sparling v. Hoffman Constr.*

1   *Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988)); *see also Forrest v. Spizzirri*, 62 F.4th 1201

2   at 1204–06 (9th Cir. 2023) (finding that recent Supreme Court case law does not abrogate

3   *Johnmohammadi*).

4   **C.   The Court's Authority to Manage its Docket**

5          The Supreme Court has repeatedly recognized district courts' "inherent authority to

6   manage their dockets and courtrooms with a view toward the efficient and expedient resolution

7   of cases." *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) (collecting cases). This authority includes

8   discretion "to manage their own affairs so as to achieve the orderly and expeditious disposition

9   of cases," *G. Russell Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991), *reh'g denied*, 501 U.S.

10  1269 (internal quotation omitted), "the power to strike items from the docket as a sanction for

11  litigation conduct," *Ready Transp., Inc. v. AAR Mfg., Inc*., 627 F.3d 402, 404 (9th Cir. 2010)

12  (collecting cases), and to otherwise sanction misconduct, *id.* at 405.

13                            **III.   ANALYSIS**

14  **A.   The Court Declines to Consider Non-Responsive Aspects of the Parties' Filings**

15         Pursuant to its inherent power to manage its docket, the Court declines to consider certain

16  unresponsive portions of the submissions filed by both Parties following its September 25, 2023,

17  Order to Show Cause. The Order to Show Cause explicitly stated that all responses must be

18  "*strictly limited* to addressing the existence of an arbitration agreement and its contents during

19  the Parties' relationship." Dkt. No. 72 at 2 (emphasis in original). A prior Order had also warned

20  Plaintiff that "any future filings that are not previously authorized by the Court, [would not be

21  entertained] in considering Defendants' pending motion to dismiss and compel arbitration." Dkt.

22  No. 56 at 2.

23         Defendants' briefing raised arguments going to the merits of the case which are irrelevant

24  to whether to compel arbitration. *See* Dkt. No. 73 at 2–3. These arguments could have been

1    appropriate in resolving the motion to dismiss but were not raised in the original motion. *See*

2    Dkt. No. 35. It is unacceptable legal practice to present new argument at this stage. *See, e.g.*,

3    *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1214–15 (9th Cir. 2020) (declining to consider

4    new arguments raised for the first time in response to an order for supplemental briefing).

5            Both Parties had to file corrections to their initial responses to the Order to Show Cause.

6    *See* Dkt. Nos. 74, 75, 76, 77. Plaintiff's second response to the Order to Show Cause appears to

7    be an attempted praecipe (correction) filed on the same day as his first response, in order to

8    attach evidence for the Court to consider. *See* Dkt. No. 77 at 4–5 (appending hyperlinks and

9    photos to his previous filing with the explanation "Note: These are links to the exhibits as I'm

10   not able to submit them on the docket."). That same day, Plaintiff then filed the Motion for

11   Extension of Time to Add Exhibits in which he requested additional time to mail a thumb drive

12   containing the exhibits he had attempted to include in his most recent filing. Dkt. No. 78. The

13   Court received the thumb drive on October 19, 2023, and it contained the same exhibits he had

14   already included as hyperlinks and photos in his earlier filing. *See* Dkt. Nos. 77, 79. Only one of

15   the exhibits contained in these filings is responsive to the Order to Show Cause; the others go to

16   the merits of his underlying claims. The one responsive exhibit is Exhibit 6, a screenshot with his

17   emails grouped from "IMofficial." Dkt. No. 77 at 5 ("Receipt Screenshot"). The earliest of the

18   emails has the subject line "Receipt for your Payment (Ref# 270700518")" and is dated October

19   30, 2020. *Id.* While the receipt does not specify what the payment is for, it says it is for an order

20   from International Markets Live, Ltd., in the amount of $274.95. *Id.* On the thumb drive

21   submission, Plaintiff has labeled this image as "6IMLdate I joined," and his written submission

22   indicates that this was filed to show that his association with IML began before 2021. Dkt. No.

23   77 at 5.

24

1    The Court therefore GRANTS Plaintiff's Motion for Extension of Time to Add Exhibits

2 (Dkt. No. 78) even though it disregards most of the exhibits contained in his subsequent physical

3 filing as well as in his corrected response to the Order to Show Cause. *See* Dkt. Nos. 77, 79. For

4 clarity's sake, in issuing this Order, the Court considers Plaintiff's response to the Order to Show

5 Cause at Dkt. No. 77 and the Receipt Screenshot at page 5 of Dkt. No. 77.

6 **B.   Some, Though Not All, of Plaintiff's Claims are Subject to Mandatory Arbitration**

7    An agreement to arbitrate exists in this case. The FAA applies because interstate

8 commerce is involved, as IML is a provider of educational services across state lines. Dkt.

9 No. 35 at 10–11. Defendants explain that to access the content of the IML website about which

10 Plaintiff complains, he would have needed to sign terms and conditions, which included—for at

11 least part of the relevant timeframe, as addressed below—a mandatory arbitration provision. Dkt.

12 No. 35 at 2; Dkt. No. 75 ¶ 10. Though at one point Plaintiff flatly denies having signed such an

13 agreement (*see* Dkt. No. 77 at 2), a blanket denial is insufficient to controvert this fact, as "the

14 party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for

15 arbitration." *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91–92 (2000). Indeed, "[i]f the

16 party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the

17 party opposing may not rest on a denial but must submit evidentiary facts showing that there is a

18 dispute of fact to be tried." *Grabowski v. Robinson*, 817 F.Supp.2d 1159, 1168 (S.D. Cal. 2011)

19 (quoting *Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2nd Cir. 1995)).

20    The Parties disagree on the date Plaintiff became a subscriber of IML. Mr. Mayes asserts

21 that he became a customer of IML "around 2019 until [A]ugust of 2022." Dkt. No. 12 at 7.

22 Based upon the information currently in the record, Plaintiff signed user agreements with IML

23

24

1    on July 2, 2020, December 19, 2020, October 18, 2021, and July 1, 2022.[1] Dkt. No. 75 ¶ 10. It

2    appears that Mr. Mayes paid for subscriptions on July 2, 2020, December 19, 2020, October 18,

3    2021, and July 1, 2022. Dkt. No. 35 at 2. Defendants assert that each time Mr. Mayes became a

4    subscriber, he would have had to check a box to confirm he had completely read and fully agreed

5    to the revised terms and conditions. Dkt. No. 73 at 2; Dkt. No. 75 ¶ 9.

6            Defendants assert that the January 15, 2021, Terms and Conditions document ("Original

7    Terms and Conditions") was in place from "sometime in 2018" until June 4, 2021. Dkt. No. 73

8    at 2; Dkt. No. 75 ¶ 4. However, the Dispute Provision (Paragraph 11.11) of the Original Terms

9    and Conditions only applied to Independent Affiliates. Dkt. No. 73 at 2. Defendants admit that as

10   Mr. Mayes first joined IML as a subscriber and not an Independent Affiliate, the Dispute

11   Provision of the Original Terms and Conditions "does not seem to apply to Mr. Mayes." *Id.*

12   Neither of the agreements he signed on July 2, 2020, or December 19, 2020, required him (as a

13   non-Independent Affiliate) to submit to mandatory arbitration for claims against IML. *Id.*

14   Therefore, Plaintiff's claims as an IML subscriber arising before June 2021 are not subject to

15   mandatory arbitration. *Id.*

16           IML introduced a mandatory arbitration provision in its agreements with subscribers (as

17   opposed to Independent Affiliates) beginning on June 5, 2021. Dkt. No. 73 at 4, Dkt. No. 75

18   ¶ 10. Plaintiff signed the updated agreements containing this mandatory arbitration clause on

19   October 18, 2021, and again on July 1, 2022. Dkt. No. 73 at 4; Dkt. No. 75 ¶ 10.[2] Looking to the

20

21

22   ───────────────
     [1] The only evidence Mr. Mayes has submitted to date regarding when he became an IML customer is the Receipt
23   Screenshot discussed in Part III.A of this Order, which is a payment receipt for something Plaintiff purchased from
     IML that does not specify the payment's purpose (whether for a membership subscription or otherwise).

     [2] Defendants' briefing contains a typo, but it is clear from multiple places in their most recent filings that the
24   relevant date on which Plaintiff first signed agreements required mandatory arbitration was October 18, 2021.

ORDER ON MOTION TO COMPEL ARBITRATION AND DISMISS, MOTION FOR SUMMARY JUDGMENT, MOTION FOR
SANCTIONS, AND MOTION FOR EXTENSION - 7

agreements Plaintiff signed that *do* require mandatory arbitration, the relevant provision provides in full as follows:

### Disputes & Arbitration; Applicable Law.

PLEASE READ THIS SECTION CAREFULLY. IT MAY SIGNIFICANTLY AFFECT YOUR LEGAL RIGHTS, INCLUDING YOUR RIGHT TO FILE A LAWSUIT IN COURT.

Using or accessing the Site and/or enrolling as Member constitutes your acceptance of this Arbitration provision. Please read it carefully as it provides that you and we will waive any right to file a lawsuit in court or participate in a class action for matters within the terms of the Arbitration provision. We welcome you to contact Customer Service regarding issues or concerns you may have. This arbitration agreement does not in any way alter your ability to bring concerns to the attention of Customer Service at support@im.academy.

   *A.  Class Action Waiver and Agreement to Arbitrate.*

EXCEPT FOR DISPUTES THAT QUALIFY FOR SMALL CLAIMS COURT, ALL DISPUTES ARISING OUT OF OR RELATED TO THESE TERMS OF USE OR ANY ASPECT OF THE RELATIONSHIP BETWEEN YOU AND IM WHETHER BASED IN CONTRACT, TORT, STATUTE, FRAUD, MISREPRESENTATION, OR ANY OTHER LEGAL THEORY, WILL BE RESOLVED THROUGH FINAL AND BINDING ARBITRATION BEFORE A NEUTRAL ARBITRATOR INSTEAD OF IN A COURT BY A JUDGE OR JURY, AND YOU AGREE THAT IM AND YOU ARE EACH WAIVING THE RIGHT TO SUE IN COURT AND TO HAVE A TRIAL BY A JURY. YOU AGREE THAT ANY ARBITRATION WILL TAKE PLACE ON AN INDIVIDUAL BASIS; CLASS ARBITRATIONS AND CLASS ACTIONS ARE NOT PERMITTED AND YOU ARE AGREEING TO GIVE UP THE ABILITY TO PARTICIPATE IN A CLASS ACTION.

   *B.  Arbitration Process and Procedure.*

The arbitration will be administered by Judicial Arbitration Mediation Services, Inc. ("JAMS") pursuant to the JAMS Streamlined Arbitration Rules & Procedures effective July 1, 2014 (the "JAMS Rules") and as modified by this agreement to arbitrate. The JAMS Rules, including instructions for bringing arbitration, are available on the JAMS website at http://www.jamsadr.com/rules-streamlined-arbitration. The Minimum Standards are available at https://www.jamsadr.com/consumer-minimum-standards. The arbitrator will conduct hearings, if any, by teleconference or videoconference, rather than by personal appearances, unless the arbitrator determines upon request by you or by us that an in-person hearing is appropriate. Any in-person appearances will be held at a location which is reasonably convenient to both parties with due consideration of their ability to travel and other pertinent circumstances. If

the parties are unable to agree on a location, such determination should be made by JAMS or by the arbitrator. The arbitrator's decision will follow the terms of these terms and conditions and will be final and binding. The arbitrator will have authority to award temporary, interim, or permanent injunctive relief or relief providing for specific performance of these terms and conditions, but only to the extent necessary to provide relief warranted by the individual claim before the arbitrator. The award rendered by the arbitrator may be confirmed and enforced in any court having jurisdiction thereof. Notwithstanding any of the foregoing, nothing in these terms and conditions will preclude you from bringing issues to the attention of federal, state, or local agencies and, if the law allows, they can seek relief against us for you.

### C. *Applicable Law.*

These terms and conditions will be governed by and construed under the laws of the United States (including federal arbitration law) and the State of Nevada without regard to conflicts of law principles.

Dkt. No. 75 at 22.

The Court thus finds that for the time period Mr. Mayes subscribed to IML between October 18, 2021, until August 2022,[3] a mandatory arbitration agreement was in place between the Parties. This agreement encompasses the entire dispute during that timeframe because the alleged amount in controversy exceeds what may be considered by a small claims court (*see* Dkt. No. 12 at 12), and Plaintiff's claims under Washington law are covered under the arbitration provision's explicit terms. *See* Dkt. No. 75 at 22 (the arbitration provision at issue covers "ALL DISPUTES ARISING OUT OF OR RELATED TO THESE TERMS OF USE OR ANY ASPECT OF THE RELATIONSHIP BETWEEN [Plaintiff] AND IM").

Plaintiff argues that "[i]n the event that [he] did sign" an arbitration provision, that his contract with IML is invalid due to procedural and substantial unconscionability. Dkt. No. 77 at 2. When a party challenges the validity of an entire agreement, the arbitrator has "exclusive

---

[3] Plaintiff was an IML customer until August 2022. Dkt. No. 12 at 1. He last paid for an IML subscription on July 1, 2022, and that subscription lasted one month. Dkt. No. 35 at 2. He last logged into his IML account on August 7, 2022. *Id.* at 4.

1  authority to decide whether the [a]greement is enforceable." *Rent-A-Center, West, Inc. v.*

2  *Jackson*, 561 U.S. 63, 66 (2010). "However, when a plaintiff argues that an arbitration clause,

3  standing alone, is unenforceable—for reasons independent of any reasons the remainder of the

4  contract might be invalid—that is a question to be decided by the court." *Bridge Fund Cap.*

5  *Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1000 (9th Cir. 2010) (internal citation

6  omitted). *Bridge Fund* counsels that when a challenge to an arbitration clause's validity "is an

7  entirely distinct issue from the contract claims in the case," courts should look beyond the

8  complaint to the briefing resisting a motion to compel arbitration "to determine if Plaintiffs'

9  objections to the arbitration clause are severable from Plaintiffs' challenge to the validity of

10  the . . . agreement as a whole." *Id.* at 1002.

11          Here, Plaintiff makes no mention of the arbitration agreement in his complaint. *See* Dkt.

12  No. 12. Therefore, the Court looks to his response brief to the motion to compel arbitration, but

13  his brief focuses on allegations that IML breached the Washington Consumer Protection Act and

14  not on the arbitration clause standing alone. *See* Dkt. No. 53. Plaintiff's dispute regarding the

15  validity of the arbitration provision is framed as follows: "**Considering the ethical and legal**

16  **violations committed by IML, as outlined in the applicable statutes**, any alleged arbitration

17  agreement associated with the company is null and void." *Id.* at 3 (emphasis added). Plaintiff

18  elaborates on this argument in his response to the Court's Order to Show Cause, explaining that

19  he raises unconscionability challenges to the arbitration agreement because "there exist legal

20  reasons to invalidate **the contract as a whole**." Dkt. No. 77 at 2 (emphasis added). His briefing

21  clearly challenges the contract as a whole, rather than the arbitration provision specifically.

22  Because Plaintiff's arguments regarding the validity of the arbitration agreement are inseparable

23  from his arguments regarding the validity of his contract with IML as a whole, they must be

24  reviewed by the arbitrator, rather than the Court.

1    Therefore, without ruling on whether the arbitration provision is valid, the Court

2  COMPELS ARBITRATION of Plaintiff's post-October 18, 2021, claims in accordance with the terms

3  of that agreement.

4  **C.    Dismissal is Not Warranted in this Case**

5    A portion of Plaintiff's claims (those arising *before* he signed the arbitration provision on

6  October 18, 2021) are not subject to arbitration. The Supreme Court has affirmed that "even if it

7  leads to piecemeal litigation . . . . federal courts must examine with care the complaints seeking

8  to invoke their jurisdiction in order to separate arbitrable from nonarbitrable claims." *KPMG*

9  *LLP v. Cocchi*, 565 U.S. 18, 19 (2011) (citing *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213,

10  217 (1985) ("the [Federal] Arbitration Act requires district courts to compel arbitration of

11  pendent arbitrable claims when one of the parties files a motion to compel, even where the result

12  would be the possibly inefficient maintenance of separate proceedings in different forums")).

13  The Court thus DENIES Defendants' motion to dismiss.

14  **D.    Plaintiff's Motion for Partial Summary Judgment is Premature**

15    Plaintiff seeks summary judgment "on the issue of the defendant's operation of an illegal

16  pyramid promotional scheme under Chapter 19.275 RCW." Dkt. No. 58 at 2. This issue will be

17  decided by an arbitrator with respect to Plaintiff's arbitrable claims. Regarding the nonarbitrable

18  claims, it is inappropriate to entertain a motion for summary judgment at this early stage of the

19  case. *See, e.g., Tex. Partners v. Conrock Co.*, 685 F.2d 1116, 1119 (9th Cir. 1982), *cert. denied*,

20  460 U.S. 1029 (1983) (holding that district court abused its discretion in granting summary

21  judgment without providing discovery); *Encinas v. Univ. of Wash.*, C20-1679, 2022 WL

22  4598083 at *8 (W.D. Wash. 2022) (explaining that "motions for summary judgment are

23  frequently considered premature and denied when discovery has not been completed" (internal

24

1   citations omitted)). For purposes of judicial efficiency, the Court STRIKES the motion as

2   premature without prejudice to re-filing at a later stage if still appropriate.

3   **E.      The Court Declines to Issue Sanctions**

4       The Court may issue sanctions in response to litigation misconduct by an attorney or

5   unrepresented party. Under the Federal Rules of Civil Procedure, sanctions may be sought when

6   court filings are presented for an improper purpose, lack evidentiary support, or include frivolous

7   legal contentions. Fed. R. Civ. P. 11(b), (c).

8       In the present case, Plaintiff seeks sanctions against Defendants based on multiple alleged

9   violations: (1) their deceptive misrepresentation of his status as not an "Independent Business

10  Owner" with IML; (2) their "deliberate and calculated distortion of the elemental aspects of a

11  pyramid scheme;" and (3) their "meticulous[] endeavor[s] to mask the inherent characteristics of

12  a pyramid scheme as employed by IM Academy." Dkt. No. 61 at 4–5. In response, Defendants

13  likewise seek sanctions against Plaintiff due to the numerosity and alleged frivolity of his filings.

14  Dkt. No. 63 at 7–8.

15      The Court finds that Defendants are unlikely to have misrepresented Plaintiff's

16  subscription status with IML, and Plaintiff has provided no explanation for why his status as a

17  "subscriber" rather than an "Independent Business Owner" would substantively impact his legal

18  claims. *See* Dkt. No. 61 at 2. Like regular subscribers, Independent Business Owners are only

19  given access to IML's web content once IML has approved the individual's executed

20  agreements, which are the same for both types of customers. *See* Dkt. No. 35 at 3. Additionally,

21  the Court finds that Defendants have not misrepresented the legal elements of a pyramid scheme

22  under Washington law, which defines a pyramid scheme as "any plan or operation in which a

23  person gives consideration for the right or opportunity to receive compensation that is derived

24  primarily from the recruitment of other persons as participants in the plan or operation, rather

than from the bona fide sale of goods, services, or intangible property to a person or by persons to others." RCW 19.275.020(4). Defendants used this definition in their briefing and accurately summarized the elements of a pyramid scheme from this definition. *See* Dkt. No. 59 at 6. Similarly, the Court finds there is no evidence that Defendants have misrepresented the underlying facts of the case.

Meanwhile, though Plaintiff's unauthorized filings to date have been a burden on opposing counsel as well as the Court (*see*, *e.g.*, Dkt. No. 52 at 2–3), the Court declines to sanction the *pro se* litigant who is earnestly and vigorously prosecuting his case at this early stage in the proceedings. Both Parties' requests for sanctions are therefore DENIED. This is Plaintiff's third notice that his conduct has been out of compliance with the Local Civil Rules and the Federal Rules of Civil Procedure. *See* Dkt. Nos. 52 and 56. Further use of litigation tactics that appear to be for the purpose of harassment and filing of additional procedurally deficient motions or unauthorized filings may be grounds for issuance of sanctions.

## IV.   CONCLUSION

For the reasons set forth above, the Court ORDERS the following:

1.   Defendants' Motion to Compel Arbitration and Dismiss (Dkt. No. 35) is GRANTED in part and DENIED in part. The Parties are ORDERED to proceed with arbitration in accordance with their agreement on Plaintiff's claims for the period beginning October 18, 2021, through the remainder of his time as an IML subscriber.

2.   Plaintiff's Motion for Summary Judgment (Dkt. No. 58) is STRICKEN.

3.   Plaintiff's Motion for Sanctions (Dkt. No. 61) is DENIED, as is Defendants' request for sanctions contained in their responsive briefing.

4.   Plaintiff's first attempted response to the Order to Show Cause (Dkt. No. 76) is STRICKEN.

5.  Plaintiff's Request for Extension of Time to Add Exhibits (Dkt. No. 78) is GRANTED.

6.  The Parties are ORDERED to file a joint status report **no more than ninety (90) days from the date of this Order** and **every ninety (90) days thereafter** informing the Court of the status of Mr. Mayes' claims against Defendants for the time period Mr. Mayes subscribed to IML between October 18, 2021, until August 2022. The Parties are further DIRECTED to file a joint status report informing the Court of the following developments **within seven (7) days of their occurrence**: (i) if the claims sent to arbitration are resolved, (ii) if the Parties reach a settlement on any claims, or (iii) if there is any other significant change in the status of this case. Any other motions or filings may be summarily stricken.

Dated this 2nd day of November 2023.

Tana Lin
United States District Judge