UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARK MAYES,<br><br>    Plaintiff,<br> v.<br><br>INTERNATIONAL MARKETS LIVE et al.,<br><br>    Defendants. | CASE NO. 2:22-cv-01269-TL<br><br>ORDER ON MOTION TO DISMISS |

This case arises out of Defendants' allegedly fraudulent business, which provided customers with information and education about investing in the foreign currency exchange ("forex") market. This matter is before the Court on Defendants' motion to dismiss. Dkt. No. 110. Having reviewed Defendants' motion, Plaintiff's response(s)[1] (Dkt. Nos. 115, 116), Defendants' reply (Dkt. No. 119), and the relevant record, the Court GRANTS the motion and DISMISSES the complaint.

---

[1] Plaintiff filed two surreplies (Dkt. Nos. 120, 122), the second of which is captioned as a "notice regarding Rule 9(b) particularity and evidence of enterprise-wide fraud." As discussed below, *see infra* Section III.A, these surreplies are improper, and the Court has not considered them in adjudicating Defendants' motion to dismiss.

## I. BACKGROUND

Plaintiff alleges that Defendants' investor-education product was "[a]n illegal pyramid scheme." Dkt. No. 12 (First Amended Complaint ("FAC") at 7. Among Plaintiff's allegations is an assertion that he "lost more than $30,000 dollars [*sic*] because of the defendant giving poor quality forex trading advice, signals, and a marketing scheme disguised as education on how to become a profitable forex trader." *Id.*

### A. The Parties

Plaintiff, proceeding pro se, is Mark Mayes. Plaintiff describes himself as "a business owner, CEO of a nonprofit organization, and college student." *Id.* When Plaintiff first filed this action against Defendants, he was a resident of Bellevue, Washington. *Id.* at 1.

Defendants are International Markets Live ("IML"), a company headquartered in Westchester County, New York, and Isis de la Torre and Christopher Terry, both of whom are identified in the FAC as "CEO." *Id.* at 2.

### B. Factual Background

Plaintiff's recitation of the facts is difficult to follow. The pleading is something of a mosaic of disparate pieces of information and allegation that, even when taken together, do not provide a complete picture or chronological narrative of Defendants' alleged misconduct. In short, Plaintiff alleges that he was a "defrauded customer of IML from around 2019 until [A]ugust of 2022." *Id.* at 7. Although it is not entirely clear from the FAC, it appears that Plaintiff paid IML "thousands of dollars" for information about investing in the forex market. *See id.* Plaintiff alleges that he was taken in by IML's "marketing scheme disguised as education on how to become a profitable forex trader." *Id.*

C.  **Procedural Background**

   1.  **Pleadings**

On September 9, 2022, Plaintiff, proceeding pro se, filed an application to proceed *in forma pauperis* ("IFP"). Dkt. No. 1. On September 12, 2022, the Honorable S. Kate Vaughan, United States Magistrate Judge, advised Plaintiff that his IFP application was deficient and ordered him to submit a revised application (Dkt. No. 3), which Plaintiff did on September 27, 2022 (Dkt. No. 5). On September 28, 2022, Judge Vaughan granted Plaintiff's IFP application. Dkt. No. 6. The Clerk of Court docketed Plaintiff's complaint that same day. Dkt. No. 7. On September 28, 2022, Plaintiff moved to have the Court appoint counsel to represent him (Dkt. No. 8); on November 9, 2022, the Court denied the motion (Dkt. No. 16).

On September 28, 2022, Plaintiff attempted to supplement his complaint with a "statement of claims." Dkt. No. 9. On October 24, 2022, pursuant to the Court's order (Dkt. No. 11), Plaintiff filed a FAC that incorporated factual allegations from the statement of claims. Dkt. No. 12. This FAC represents the operative pleading in this case.

   2.  **Service**

Service of process proceeded in fits and starts. After Plaintiff made multiple unsuccessful attempts to obtain summonses (Dkt. Nos. 14, 17, 18), on November 16, 2022, the Clerk electronically issued summonses for each Defendant (Dkt. No. 19). On December 1, 2022, Plaintiff unsuccessfully attempted to serve Defendants. *See* Dkt. Nos. 20, 20-1, 20-2. Then, on December 7, 2022, Plaintiff filed a motion for default against all Defendants. Dkt. No. 23. On January 5, 2023, the Court denied Plaintiff's motion, because Plaintiff had not demonstrated proper service in accordance with Federal Rule of Civil Procedure 4. *See* Dkt. No. 26. On February 6, 2023, Plaintiff sought the Court's assistance in serving Defendants. Dkt. No. 27 (Motion for Service). On March 9, 2023, the Court granted Plaintiff's motion and directed the

1  Clerk of Court to send to Defendants via U.S. Mail Plaintiff's pleading and summonses, among

2  other things. *See* Dkt. No. 28 (Order on Service by the Court). On March 24, 2023, Defendants'

3  counsel entered an appearance. Dkt. No. 29.

### 3. Arbitration

On April 19, 2023, Defendants filed a motion to dismiss and to compel arbitration. Dkt. No. 35. Plaintiff opposed. *See* Dkt. No. 53.[2] On November 2, 2023, the Court partially granted Defendants' motion to compel arbitration. Dkt. No. 80. On November 16, 2023, the Parties agreed to stay the case pending the outcome of the arbitration (Dkt. No. 82), and the Court stayed the case (Dkt. No. 83).

On February 3, 2025, the Parties advised the Court that they had settled the claims that had been submitted to arbitration. Dkt. No. 101. On February 4, 2025, the Court lifted the stay. Dkt. No. 104.

### 4. Conflict Between the Parties

Throughout the case, litigation has been contentious. The Parties have repeatedly accused each other of unprofessionalism (or worse) and have repeatedly sought sanctions against each other. *See, e.g.*, Dkt. No. 91 (Defendants' Motion to Strike) (characterizing Plaintiff's filing as "scandalous" and "serv[ing] no other purpose than to harass and annoy Defendants"); Dkt. No. 107 (Plaintiff's Motion for Sanctions) (accusing Defendants' counsel of forgery); Dkt. No. 108 (Defendants' Opp'n Br.) (seeking an award of attorney fees and costs because Plaintiff's motion was "filed for no other purpose than to harass, cause delays, and increase litigation

---

[2] Plaintiff's original opposition to Defendants' motion included motion practice, a petition, declarations, and a surreply. *See* Dkt. Nos. 39, 42, 44, 45, 46, 50, 51. Defendants moved to strike these on procedural grounds. *See* Dkt. Nos. 43, 48. The Court ordered Plaintiff to file "one consolidated response brief in opposition to the Motion to Compel Arbitration" and struck the superfluous filings, as well as Defendants' motions to strike, from the docket. *See* Dkt. No. 52.

costs"); Dkt. No. 114 (Plaintiff's Br. on Joint Status Report) (asserting that "defense has repeatedly disregarded legal and ethical standards throughout this case"). The Court, however, has never seen fit to sanction any Party or counsel.

### 5. Motion to Dismiss

On April 4, 2025, Defendants filed the instant motion to dismiss. Dkt. No. 110. On April 9, 2025, Defendants filed a motion seeking relief from their deadline to answer the FAC. Dkt. No. 112. On April 28, 2025, the Court granted the motion and vacated Defendants' deadline to file a responsive pleading. Dkt. No. 118. The Court ordered Defendants to file a responsive pleading within 30 days of the resolution of the instant motion to dismiss. *Id.*

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6)

A defendant may seek dismissal when a plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion to dismiss, the Court takes all well-pleaded factual allegations as true and considers whether the complaint "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient, a claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 672. When reviewing a dismissal pursuant to Rule 12(b)(6), "we accept as true all facts alleged in the complaint and construe them in the light most favorable to plaintiff[], the non-moving party." *DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1122 (9th Cir. 2019) (alteration in original) (quoting *Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1156–57 (9th Cir. 2017)).

B.  **Federal Rule of Civil Procedure 9(b)**

Under Rule 9(b), a defendant may seek dismissal where a plaintiff fails to plead "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003) (deeming a motion to dismiss under Rule 9(b) "the functional equivalent" of a motion to dismiss under Rule 12(b)(6) and thus treating dismissal under both rules "in the same manner"). Under Rule 9(b), "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b), but a plaintiff must normally plead "the who, what, when, where, and how of the misconduct charged," *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citation modified) (quoting *Vess*, 317 F.3d at 1106).

### III.  DISCUSSION

A.  **Plaintiff's Superfluous Filings**

As a preliminary matter, the Court considers Defendants' motion to strike Plaintiff's surreplies (Dkt. No. 125). After Defendants filed their motion to dismiss (Dkt. No. 110), Plaintiff timely responded, (Dkt. Nos. 115, 116),[3] and Defendants timely filed their reply (Dkt. No. 119), thus rendering the matter fully briefed. *See* LCR 7(d)(4).

On May 6, 2025, however, four days after Defendants filed their reply, Plaintiff submitted a surreply. Dkt. No. 120. Then, on May 26, 2025, Plaintiff filed a "notice of supplemental authority and material facts." Dkt. No. 121. Finally, on May 29, 2025, Plaintiff filed a second surreply, which he captioned as "Plaintiff's notice regarding Rule 9(b) particularity and evidence of enterprise-wide fraud." Dkt. No. 122. On June 11, 2025, Plaintiff

---

[3] On April 14, 2025, Plaintiff filed a "rebuttal to Defendants' motion to dismiss." Dkt. No. 115. Approximately 14 minutes later, Plaintiff filed "rebuttal to Defendants' motion to dismiss pt. 2." Dkt. No. 116. "Part 2" is less than one paragraph long, so the Court overlooks the procedural hitch and considers both documents to be part of the same filing.

moved to strike the two surreplies and the notice (Dkt. No. 125), which Plaintiff responded to on June 27, 2025 (Dkt. No. 127).

### 1. Surreplies

In this District, surreplies may only be filed to request that the Court "strike material contained in or attached to a reply brief." LCR 7(g). "[A] surreply filed for any other reason will not be considered." LCR 7(g)(2). In any event, prior to filing a surreply, a party must comply with the procedural requirements of Local Civil Rule 7(g).

Plaintiff's first surreply is a direct response to arguments made in Defendants' reply. *See generally* Dkt. No. 120. It is not a request that the Court strike material from the reply brief. It is thus inappropriate, and the Court STRIKES it from the docket. Plaintiff's second surreply represents more of the same. Although Plaintiff artfully captions the second surreply as a "notice," it, like the first surreply, directly addresses arguments that Defendants made in their motion to dismiss and reply brief. *See generally* Dkt. No. 122. It is thus inappropriate, and the Court STRIKES it from the docket.[4]

### 2. Notice of Supplemental Authority and Material Facts

Under Local Civil Rule 7(n), "Before the court rules on a pending motion, a party may bring to the court's attention relevant authority issued after the date the party's last brief was filed by serving and filing a Notice of Supplemental Authority that attaches the supplemental authority without argument." Here, Plaintiff's submission (Dkt. No. 121) is improper. For one thing, the document that Plaintiff provides is a civil complaint filed in a district court case in the District of Nevada; as such, it is not "authority," which typically includes court decisions,

---

[4] In any event, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)).

ORDER ON MOTION TO DISMISS – 7

statutes, ordinances, and administrative rulings. *See* Dkt. No. 121-1 (Civil Complaint); "Authority," *Black's Law Dictionary* (12th ed. 2024). For another, Plaintiff's Notice includes three pages of impermissible argument. *See* Dkt. No. 121 at 1–3. The submission thus violates Local Civil Rule 7, and the Court STRIKES it from the docket.

B.   **Claims**

Plaintiff asserts five claims: fraud, securities fraud, violation of 15 U.S.C. § 78j, racketeering, and discrimination. *See* Dkt. No. 12 at 3. The Court addresses these in turn.

1.   **Fraud**

Common-law fraud is a state-law tort. *See Vess*, 317 F.3d at 1103 (citing *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1985)) (noting that a federal court "will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action").

As a preliminary matter, the Court notes that Plaintiff does not allege which state's law governs the claim. *See* Dkt. No. 12 at 3, 7–12. This omission alone provides sufficient basis to dismiss the claim, as Ninth Circuit courts have held that "failure to allege which state law governs a common law claim is grounds for dismissal." *Romero v. Flowers Bakeries, LLC*, No. C14-5189, 2016 WL 469370, at *12 (N.D. Cal. Feb. 8, 2016). "Courts have reasoned that given the variance in state laws, failure to allege which state law governs prevents an assessment of whether the claims are adequately pleaded." *Kavehrad v. Vizio, Inc.*, No. C21-1868, 2022 WL 16859975, at *3 (C.D. Cal. Aug. 11, 2022). However, Defendants have not raised this issue and instead presume that Washington law applies to the claims. *See* Dkt. No. 110 at 7. Yet irrespective of which state's law applies, "the Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule." *Vess*, 317 F.3d at 1097 (quoting *Hayduk*, 775 F.2d at 443) (citation modified). Regardless of whichever state's law controls the claim, Plaintiff's pleading does not meet the particularity requirements of Rule 9(b).

When pleading fraud, a plaintiff must normally plead "'the who, what, when, where, and how' of the misconduct charged," *Kearns*, 567 F.3d at 1124 (quoting *Vess*, 317 F.3d at 1106). "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *In re Finjan Holdings, Inc.*, 58 F.4th 1048, 1057 (9th Cir. 2023) (citation modified) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). Plaintiff's allegations, as pleaded, do not do this.

Plaintiff alleges that he "was defrauded several times," but he never specifically alleges what the fraud was. Dkt. No. 12 at 7. Instead, Plaintiff makes generic allegations of wrongdoing: "On its face IML academy is unlawful and deceptive" (*id.*); "[Arlett] directly lied to me, after trying to evade my questions"; (*id.* at 8); "IML gives false information on how to trade" (*id.* at 9); "[Defendants] are actively committing securities fraud" (*id.* at 10); "People are being defrauded" (*id.* at 11). Plaintiff does not provide the "specific content of the false representations," nor does he provide "the identities of the parties to the misrepresentation." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (quoting *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1393 (9th Cir. 1989)). As Defendants assert, "Plaintiff fails to even allege that the purported misrepresentations were made to Plaintiff, that Plaintiff relied on them, that the statements were in fact false (and/or how or why the alleged misrepresentations were misleading), or that the purported statements directly harmed Plaintiff." Dkt. No. 110 at 10. The Court agrees with Defendants that the claim, as pleaded, consists of "vague, broad, and conclusory allegations that 'Defendant' gave false information or wrong information to its customers in general . . . ." *Id.* This is not sufficient to satisfy Rule 9(b). *See Bly-Magee*, 236 F.3d at 1018.

2.     **Securities Fraud**

Like fraud, common-law securities fraud is a state-law tort. *See Flaxel v. Johnson*, 541 F. Supp. 2d 1127, 1144 (S.D. Cal. 2008) ("Although Congress has prohibited the states from regulating the registration of certain classes of securities, states may continue to regulate the sale of securities through statutory and common-law causes of action for securities fraud."). Once again, Plaintiff does not allege which state's law governs this claim (*see* Dkt. No. 12 at 10), while Defendants, for their part, simply presume that Washington law applies (*see* Dkt. No. 110 at 7). As with Plaintiff's first claim, his failure to allege which state's law controls the claim could be a ground for dismissal here. As Defendants do not raise this issue, however, the Court will not dismiss this claim on that basis. Even so, as is the case with Plaintiff's fraud claim, Plaintiff's securities-fraud claim is insufficient under Rule 9(b).

The particularity requirements of Rule 9(b) also apply to claims of securities fraud in federal court.[5] *See Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 605 (9th Cir. 2014); *Vess*, 317 F.3d at 1097. In a statutory claim for securities fraud brought under Washington law—admittedly not what Plaintiff asserts, but a useful guide nonetheless—a plaintiff must adequately plead "two essential" elements: "(1) a fraudulent or deceitful act committed (2) in 'connection with the offer, sale or purchase of any security.'" *Kinney v. Cook*, 159 Wn.2d 837, 842, 154 P.3d 206 (2007) (quoting RCW 21.20.010).

Plaintiff fails to adequately plead the elements of the claim. As discussed above with regard to the common-law fraud claim, Plaintiff does not identify a specific fraudulent or deceitful act. But more glaringly, Plaintiff does not in any way demonstrate "the offer, sale or

---

[5] Defendants' brief refers to the particularity requirement given in the Private Securities Litigation Reform Act of 1995 ("PSLRA") (*see* Dkt. No. 110 at 10–11), but the PSLRA applies to class actions, which this case is not. *See* 15 U.S.C. § 78u-4(a)(1). Defendants also cite Rule 9(b) as imposing a particularity requirement on a securities-fraud claim. *See* Dkt. No. 110 at 10.

purchase of any security." Plaintiff alleges that he has "lost more than $30,000," but he does not provide any details on the transaction or transactions that resulted in the loss. Dkt. No. 12 at 7. Plaintiff asserts further that he "initially paid $250, then $175 a month," but he does not specify what that money bought. Other than merely stating the dollar amounts he spent (and allegedly lost), Plaintiff provides no information regarding what that money purchased, or whether whatever was purchased was a security, as defined by the relevant law. *See, e.g.*, RCW 21.20.005(17)(a) (defining "security").

Plaintiff's claim may be deficient in other regards, but the inadequacy described above suffices to render the claim unviable, and the Court need not consider the sufficiency of the claim any further.

### 3. 15 U.S.C. § 78j

Section 78j is the codification of Section 10(b) of the Securities Exchange Act of 1934, Pub. L. 73–291, 48 Stat. 881 (1934). The statute makes it

> unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

*Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 156 (2008) (alteration and omissions in original) (quoting 15 U.S.C. § 78j).

Plaintiff does not clearly allege how Defendants violated this statute. Defendants assert that "Plaintiff's FAC fails to plead and notify Defendants how and what violated 15 U.S.C. Section 78J," arguing that "[i]t is near impossible to decipher, guess and piece meal [*sic*] from Plaintiff's FAC what of Defendants' alleged devices are manipulative and deceptive and what

ORDER ON MOTION TO DISMISS – 11

would fall under this section . . . ." Dkt. No. 110 at 12–13. The Court also is at a loss to map Plaintiff's allegations onto the text of Section 78j. For example, and as noted in the previous section, Plaintiff has not identified any security that he purchased. In the face of such ambiguity and uncertainty, this claim must be dismissed.

### 4. Racketeering

Plaintiff appears to plead a civil Racketeer Influenced and Corrupt Organizations ("RICO") Act claim. *See* 18 U.S.C. § 1962. This statute "makes it unlawful for any person associated with an alleged racketeering enterprise 'to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.'" *United Energy Trading, LLC v. Pac. Gas & Elec. Co.*, 146 F. Supp. 3d 1122, 1138 (N.D. Cal. 2015) (quoting 18 U.S.C. § 1962(c)). "To state a civil claim for violations of § 1962(c), a plaintiff must allege '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as "predicate acts") (5) causing injury to plaintiff's business or property.'" *Id.* (quoting *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996)).

Plaintiff appears to allege "predicate acts" of securities fraud. Therein lies the problem. A civil RICO claim predicated on fraud must satisfy Rule 9(b). *See Edwards*, 356 F.3d at 1065–66. As discussed above, *see supra* Section III.B.1, Plaintiff's pleading does not meet the particularity requirement and is thus deficient. Therefore, the civil RICO claim is inadequately pleaded.

### 5. Discrimination

Plaintiff makes two allegations of discrimination. First, Plaintiff alleges that "IML targets Christians and minorities needing to make a better life." Dkt. No. 12 at 10. Second, Plaintiff alleges that "racial slurs are used on the regular." *Id.* Defendants treat Plaintiff's allegations as if they were pleaded under Title VII of the Civil Rights Act of 1964 and/or the Washington Law Against Discrimination ("WLAD"). *See* Dkt. No. 110 at 19. These statutes, however, are not

cited—or even mentioned—in the FAC, and Plaintiff does not clarify the basis for the discrimination claim in his opposition to Defendants' motion to dismiss. *See generally* Dkt. No. 115. Moreover, Plaintiff's opposition brief does not respond in any way to Defendants' arguments regarding dismissal of his discrimination claims. The Court will not construct a cause of action where Plaintiff has not provided one, and therefore this claim must be dismissed.

### C.  Defendants De La Torre and Terry

Defendants assert that Defendants Isis de la Torre and Christopher Terry must be dismissed as parties because Plaintiff has not alleged that the Court can exercise personal jurisdiction over them. *See* Dkt. No. 110 at 20. Having dismissed all substantive claims against all Defendants, however, the Court need not consider Defendants' personal-jurisdiction argument. Dismissal of all claims against these Defendants renders this issue moot. *See Wehlage v. EmpRes Healthcare Inc.*, 821 F. Supp. 2d 1122, 1124 (N.D. Cal. 2011) (personal-jurisdiction issue moot where plaintiff fails to state a claim against defendants).

### D.  Prejudice

"[A] party is not entitled to an opportunity to amend his complaint if any potential amendment would be futile." *Mirmehdi v. United States*, 689 F.3d 975, 985 (9th Cir. 2012). "Normally, when a viable case may be pled, a district court should freely grant leave to amend." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys, Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011). "[D]ismissals for failure to comply with Rule 9(b) should ordinarily be without prejudice." *Vess*, 317 F.3d at 1108. But "the district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Cafasso*, 637 F.3d 1047 at 1058 (citation modified). Plaintiff amended his complaint once before, some three years ago when this case was in its infancy. Even so, the Court will grant Plaintiff one further and final opportunity to amend his claims against Defendant IML. If Plaintiff intends to file a second amended complaint

("SAC"), he must do so within 30 days of this order. With respect to Plaintiff's claims against Defendants de la Torre and Terry, however, the Court is less permissive. Given that Plaintiff's FAC—his second bite at the apple—neglected to identify *any* specific wrongdoing on the part of these individuals, Plaintiff is not entitled to a third opportunity to plead these claims against these Defendants.

## IV. CONCLUSION

Accordingly, Defendants' motion to dismiss (Dkt. No. 110) and motion to strike surreplies (Dkt. No. 125) are GRANTED. It is hereby ORDERED:

(1) As to Defendant IML, Plaintiff's First Amended Complaint (Dkt. No. 12) is DISMISSED WITHOUT PREJUDICE.

(2) As to Defendants de la Torre and Terry, Plaintiff's First Amended Complaint is DISMISSED WITH PREJUDICE.

(3) If Plaintiff intends to file a second amended complaint, he shall do so **no later than December 10, 2025.**

(4) Plaintiff's filings at Docket Nos. 120, 121, and 122 are STRICKEN.

Dated this 10th day of November 2025.

Tana Lin
United States District Judge